SOMMERVILLE, J.
This is a suit for slander of title, which has been converted by the defendant into a petitory action, in which he claims the property mentioned in plaintiff’s petition to be the property of the succession of R. J. C. Bull, the father of plaintiff. He avers that R. J. C. Bull by public act—
“pretendedly sold and transferred to Robert H. Bull, plaintiff herein, the property described in paragraph 1 of his petition herein (together with other property) for a recited consideration of $5,000 cash, with the stipulation that the vendee was ‘to assume all of the mortgages against the foregoing described property.’ ”
He further avers:
“That the said sale was a mere sham and a simulation, passed for the purpose of screening the property from the pursuit of the creditors of the said R. J. C. Bull, deceased;” that R. J. C. Bull had indorsed notes amounting to $1,200 *983 drawn by R. B. Dantzler, who had left unpaid eight of said notes, amounting to $800, when he, Dantzler, took advantage of the Bankruptcy Act and obtained his discharge during the year 1909; that he, R. 3. O. Bull, “conceived the plan of making a simulated transfer of said property to his said son.”
He further avers:
“That he is informed, and verily believes, and, so believing, alleges.that the sum of $5,000, alleged to have been paid, was not paid by the said Robert H. Bull, nor was any sum whatsoever paid; that the said mortgages, resting on the said property, were not really assumed by the said Robert H. Bull, nor was it the intention of the parties that he should assume the payment of said mortgages; that the said pretended sale and transfer was a mere sham and a simulation, conceived as above stated, and perfected to screen the said property — the said R. 3. O. Bull remaining in the actual possession thereof, and receiving all of the emoluments of the property up to the time of his death, all of which will be duly shown upon the trial hereof.”
Defendant, administrator, further averred that two inventories were taken in the succession, and that the last one shows a total appraisement of $2,235.99; and he prays:
“That the property described in plaintiff’s petition be declared to be the property of the said succession, * * * and your respondent authorized to administer and sell said property in due course of administration. He further prays that the said pretended transfer to the said Robert H. Bull bearing number 32510 be declared a sham and simulation, and canceled of record; that the demands of the plaintiff for damages against your respondent be rejected, and that there be judgment in favor of your respondent — as plaintiff in reconvention — in the full sum of $500, with legal interest,” and for costs.
The administrator of the succession of R. J. C. Bull, in his petition to have the act of sale to- the original plaintiff in the case declared to be simulated, is not joined by the heirs of R. J. C. Bull, who are majors; and it will be assumed that he is acting for the creditors of the succession of R. J. C. Bull, although he does not allege the existence of any such creditors excepting one, the Fred Miller Brewing Company, which has a judgment against R. 3. C. Bull for $800, with interest, as indorser of the notes before mentioned.
Defendant does not allege the insolvency of the succession; on the contrary, he alleges that the inventory value of the estate amounts to $2,235.99, which amount will be-sufficient to pay the debt alleged to be due. Under such circumstances, together with the absence of any alleged fraud or injury to creditors, defendant is without authority to attack the alleged simulated sale- made by the father to the son. Defendant alleges that the plaintiff is in possession of the property, although he also alleges that he is not in possession; and he says the property was sold by public act, which allegations cannot be entirely disregarded by the court.
Evidence was heard on the trial of the cause, over the objection of plaintiff; but it does not sustain the allegations of the defendant. The $5,000 mentioned in the act of sale was not paid by plaintiff to his father at the time of the sale; but the plaintiff gave to his father his three promissory notes for $5,000, in lieu of the cash, which notes have been paid, according to the testimony of plaintiff, excepting the last one for $2,000, which was only partially paid. Defendant did not introduce any evidence to contradict the sworn testimony of plaintiff on this point. He offered the bank account of plaintiff, the son, and argues that he (the son) did not pay the portions of the price with checks during the several years during which he alleges he was paying .the notes given to his father for said property. The bank account of the father does not show that he made deposits of the sums paid by the son, and he argues the supposition to be that no such payments were made by the one or received by the other. But, while this may be a suspicious circumstance, it is not sufficient upon which to base a judgment which deprives the plaintiff of property which he has held under a public act of sale for several years, and of which he took possession at the time of the sale.
The court would not be justified in setting *985 aside an act of sale as simulated on a mere suspicious circumstance, where there is positive evidence in the record that a portion, if not all, of the purchase price had been paid, although payment was not made at the time of, or in the manner stated in, the act of sale.
Judgment affirmed.